United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IRENE CABUANG,

    Plaintiff,

  v

JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

No C 04 2034 VRW

ORDER

Plaintiff appeals from the decision of the Social Security Administration ("SSA") denying plaintiff social security disability benefits. The court now considers cross motions for summary judgment. Doc #10; Doc #13. For the reasons stated below, the court DENIES plaintiff's motion and GRANTS defendant's motion.

**I**

**A**

To qualify for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act), plaintiff must have been disabled within the meaning of the Act on or before June 30, 1996, the date she was last insured for the purpose of DIB. Doc #8, Administrative Record (AR) 16-17.

Plaintiff was thirty-two years old on January 1, 1996, the disability onset date she alleges. AR 79, 102. Plaintiff has graduated from high school and thereafter became a licensed dental assistant. AR 92. Plaintiff last worked outside the home in 1991, at which point she devoted all of her time to raising her children and homemaking. AR 81, 92.

On September 4, 1996, plaintiff underwent a diagnostic laparoscopy to explore suspected endometriosis. AR 144-45. Dr Norman Takaki noted in his preoperative report that plaintiff described "long duration right quadrant pain." AR 144. While evidence of early stage endometriosis was observed, it was apparently "fulgurated without difficulty," (i e removed) leading to a positive resolution. Id.

In her application for DIB, plaintiff claimed that she became "too disabled to work" on September 4, 1996, after "complications" during her laparoscopy led to a tremendous increase in pain. AR 81, 87. In two other blanks on the same application, plaintiff wrote September 4, 1996 as her date of disability onset, although these entries were crossed out and replaced with January 1, 1996. AR 87. Plaintiff further reported in her application that following her laparoscopy, she could no longer interact with her children or lift fifty pounds, as she could before the surgery. AR 91, 93. Prior to her laparoscopy, plaintiff had reported occasional instances of pain in her back, abdomen and hands. AR 279A, 281, 286. Plaintiff also stated she had suffered from dysphagia, migraines, low back pain and muscle spasms since January 1, 1996. AR 87. At two separate hearings in connection with plaintiff's application for DIB, she stated that she had suffered

2

1   from pain in her right hip and leg and low back since 1992.  AR 37,
2   43-44, 471-72.
3            Since her laparoscopy, plaintiff has seen more than
4   twenty medical doctors regarding her pain symptoms.  AR 112, 120,
5   121, 132, 144, 150, 162, 167, 168, 177, 191, 192, 196, 213, 224,
6   244, 245, 259, 289, 271, 276, 442, 456.  To relieve her pain,
7   plaintiff had received chiropractic and podiatric treatment,
8   psychological counseling, acupuncture and physical therapy.  AR
9   152, 157, 216, 259, 295.  The administrative record contains
10  considerable evidence that plaintiff consistently reported to her
11  care providers that her pain resulted from medical error during her
12  laparoscopy.  AR 132, 149, 150, 155, 171, 173, 188, 190, 195, 213,
13  222, 243, 249, 259, 295.  Similarly, the record contains several
14  reports documenting plaintiff's statements to physicians that she
15  suffered no serious medical ailments prior to her laparoscopy.  For
16  example, in December 1996 Dr Marilyn Devries reported that
17  plaintiff "gives a long history of problems since she had a pelvic
18  laparoscopy about two months ago," and that her "medical history
19  * * * was negative" prior to the laparoscopy.  AR 132.  In December
20  1996 Dr Anne O'Duffy reported:  "She states that she never had
21  headaches before this [laparoscopy]."  AR 173.  In a September 1997
22  letter Dr James Davis wrote to Dr Richard Cohen:  "As you know, she
23  was in generally excellent health until September of 1996 when she
24  had laparoscopic surgery."  AR 249.  In September 1999, Dr Peter
25  Alevizos, a clinical psychologist, reported that "[b]efore the
26  operation, she was an active and vibrant mother, looking forward to
27  having a third child."  AR 295.
28  \\

3

1   Plaintiff apparently placed the lion's share of blame for
2 her pain symptoms on Dr Paul Alway, the attending anesthesiologist
3 during her laparoscopy.  AR 144, 149, 464.  The record indicates
4 that plaintiff has contemplated and possibly has instituted legal
5 action against Dr Alway and Alameda Hospital, where Dr Alway
6 practiced.  AR 149, 464.
7   Plaintiff's doctors and health care providers have been
8 unable to reach a consensus as to the cause or a diagnosis of her
9 symptoms.  Some doctors concluded that plaintiff was suffering from
10 various acute ailments, including gastroesophageal reflux disease,
11 chronic pain syndrome, irritable bowel syndrome, esophageal
12 dysphagia or myofascial pain.  AR 244, 250-253, 298.  Other
13 doctors, however, were unable to determine any medical basis for
14 plaintiff's pain symptoms.  AR 149, 193, 222, 238, 255 and 295-96.
15 For example, one doctor noted that no test results or findings
16 "correlate[] in any way, shape or form with [plaintiff's] plethora
17 of symptoms."  AR 443.  Another doctor concluded that "it is
18 difficult to reach a definitive opinion regarding causation * * *."
19 AR 464.  Finally, some doctors concluded that her symptoms were at
20 least partially psychosomatic.  AR 133, 171, 218, 258.

                                    B
23   On September 11, 1998, plaintiff filed an application for
24 DIB.  AR 79.  The SSA denied plaintiff's application initially and
25 on reconsideration.  AR 61-65, 66-69.  Plaintiff then requested a
26 hearing before an administrative law judge (ALJ).  AR 70-71.
27   On September 2, 1999, the ALJ opened plaintiff's hearing;
28 plaintiff, represented by counsel, testified that she had been

1  disabled since January 1, 1996 due to muscle spasms and pain in her
2  back, joints, right hip, and neck.  AR 21, 36.  Plaintiff testified
3  that some of her pain had been present since 1992, while other pain
4  had presented only after her laparoscopy in September 1996.  AR 37-
5  39, 43.  Plaintiff's husband, Arnold Cabuang, also testified,
6  stating that plaintiff's pain began in 1992, "decline[d]" through
7  1996, and then "dramatically" worsened after plaintiff's
8  laparoscopy.  AR 48.  On October 29, 1999, the ALJ denied benefits
9  finding that plaintiff's "disability began after June 30, 1996."
10 AR 20.

11          In general, to determine whether a claimant is entitled
12 to DIB, an ALJ employs a five-step sequential evaluation of
13 plaintiff's disability.  20 CFR § 404.1520(a)(1).  Once the ALJ
14 determines that a claimant is or is not disabled, the inquiry stops
15 at that step.  20 CFR § 404.1520(a)(4).  At the first step, the ALJ
16 considers whether the claimant is currently "doing substantial
17 gainful activity."  If not, then the ALJ inquires at the second
18 step whether the claimant has a "severe medically determinable
19 physical or mental impairment * * * or a combination of impairments
20 that is severe."  If so, then at the third step, the ALJ determines
21 whether the claimant has a condition which meets or equals the
22 conditions outlined in the Listing of Impairments in Appendix 1,
23 Subpart P.  If the claimant does not have such a condition, at step
24 four the ALJ asks whether the claimant can perform her past
25 relevant work.  At the fifth step, the ALJ considers whether the
26 claimant can make an adjustment to perform other work which exists
27 in substantial numbers in the national economy.  20 CFR
28 § 404.1520(a)(4)(i)-(v); § 404.1560(c).

Applying this five-step sequential evaluation, the ALJ in this case denied plaintiff benefits at the second step, and accordingly did not consider steps three through five. AR 16-20. The ALJ found that if plaintiff was not disabled before June 30, 1996, she could not be found eligible for DIB. AR 16. The ALJ further found that "[p]rior to June 30, 1996, the evidence fail[ed] to establish that [plaintiff] suffered from any severe impairments, let alone that she was disabled." AR 18. Because "the objective medical evidence clearly indicate[d] that [plaintiff] never had any problems prior to September 4, 1996," the ALJ deemed it unnecessary to determine whether plaintiff's "alleged impairments" were severe. Id. Plaintiff unsuccesfully requested Appeals Council review of the ALJ's denial of benefits. AR 5-6.

On March 26, 2001, plaintiff appealed the SSA's decision to this court in an action entitled <u>Cabuang v Halter</u>, Civ No 01-1228-MMC. On September 6, 2001, pursuant to stipulation between the parties, the court remanded the matter to the SSA for the purpose of granting plaintiff a new hearing, at which the ALJ was to evaluate the testimony of plaintiff's husband. AR 340-41.

On September 5, 2002, the ALJ held a second hearing. Plaintiff's testimony was similar to her testimony at the September 2, 1999 hearing, although she emphasized her pain symptoms prior to June 30, 1996. AR 471-79. The following exchange between plaintiff and her attorney, discussing plaintiff's postnatal state in 1992, is representative:

> Q: Okay. And how about afterwords going through the end of the pregnancy. Was there any problem then?
>
> A: Yes.

6

```
       Q:   What sort of problems?
       A:   Started not being able to step on my right leg, right
            foot at times.  And I would have sharp pain.
       Q:   Where would the pain be?
       A:   Right hip area.
```

AR 471.  Plaintiff's husband also testified again, offering his recollection of how plaintiff's pain symptoms had progressed.  AR 481-84.

On October 4, 2002, the ALJ issued a decision denying plaintiff benefits.  AR 325.  After observing that plaintiff must have established disability prior to June 30, 1996 in order to claim DIB, the ALJ applied the five-step sequential evaluation and again denied plaintiff benefits at the second step.  AR 319-325. Noting that mere recitation of symptoms is insufficient to establish a disability, 20 CFR § 404.1528(a), the ALJ determined that nothing in the record established that plaintiff was disabled within the meaning of the Act prior to June 30, 1996.  AR 321, 322. The ALJ found plaintiff's hearing testimony to be unhelpful, as "she focused more on her current situation than on her condition prior to" her laparoscopy in September 1996, and her recitation of pre-surgery pain symptoms "fail[ed] to reveal any details of its functional impact."  AR 323.  Testimony by plaintiff's husband also failed to "shed any light on this issue."  In fact, the ALJ commented that "the testimony of [plaintiff] and her husband * * * both set the date for the worsening of [plaintiff's] condition * * * squarely at September 4, 1996."  Id.  Regardless of the weight accorded the testimony of plaintiff and her husband, the ALJ determined that "substantial other evidence of record * * * shows

**7**

that the more than minimal limitations in [plaintiff's] ability to perform work-related functions did not arise until <u>after</u> her September 4, 1996 procedure."  Id.

Plaintiff's request for Appeals Council review was denied, making the ALJ's decision final.  AR 299-301.  On May 25, 2004, plaintiff filed this action seeking judicial review.

II

The court's jurisdiction is limited to determining whether the SSA's denial of benefits is supported by substantial evidence in the administrative record.  42 USC § 405(g).  A district court may overturn a decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error.  See <u>Andrews v Shalala</u>, 53 F3d 1035, 1039 (9th Cir 1995); <u>Magallanes v Bowen</u>, 881 F2d 747, 750 (9th Cir 1989).  The Ninth Circuit defines "substantial evidence" as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Andrews</u>, 53 F3d at 1039.  Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ.  See id; <u>Magallanes</u>, 881 F2d at 750.

III

A

The Act provides that certain individuals who are disabled shall receive disability benefits.  42 USC § 423(a). Disability is the "inability to engage in any substantial gainful

8

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). An individual will be found disabled if his impairments are such "that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * *." 42 USC § 423(d)(2)(A) Plaintiff bears the burden of proving that she was "either permanently disabled or subject to a condition which became so severe as to disable her prior to the date upon which her disability insured status expire[d]." Johnson v. Shalala, 60 F3d 1428, 1432 (9th Cir 1995). Mere recitation of pain symptoms is insufficient to establish disability under the Act. 20 CFR § 404.1528(a).

B

Plaintiff contends that she is disabled under the Act and that the ALJ's decision denying her DIB is flawed for three reasons. First, plaintiff contends that the ALJ erred by focusing almost exclusively on evidence predating plaintiff's date last insured, to the exclusion of medical evidence after that date. Second, plaintiff argues that the ALJ erred in failing to consult with a medical expert to determine plaintiff's onset date. Finally, plaintiff argues the ALJ ignored evidence of plaintiff's mental impairment and subjective pain prior to her date last insured, and that the ALJ ignored the testimony of plaintiff and her husband.

9

1

Plaintiff first alleges that the ALJ erred by focusing almost exclusively on evidence of disability prior to plaintiff's date last insured — June 30, 1996. In this regard, plaintiff points to the ALJ's finding that there was "nothing in the record to establish that the claimant had any 'impairment' as defined [by the Act] at any time prior" to plaintiff's date last insured. AR 322; Doc #10, 6:5-10.

It would indeed be error for the ALJ not to consider evidence relating to plaintiff's date of disability onset merely because that evidence dated from after plaintiff's date last insured. Lester v Chater, 81 F3d 821, 832 (9th Cir 1995); see also Smith v Bowen, 849 F2d 1222, 1225 (9th Cir 1988). After all "[i]t is obvious that medical reports are inevitably rendered retrospectively * * *." Smith, 849 F2d at 1225. This court also recognizes, however, that any "deterioration in [plaintiff's] condition subsequent to [the date last insured] is, of course, irrelevant." Waters v Gardner, 452 F2d 855, 858 (9th Cir 1971). What is relevant is whether plaintiff was disabled within the meaning of the Act prior to the expiration of her insured status. See Morgan v Sullivan, 945 F2d 1079, 1080 (9th Cir 1991).

Plaintiff's contention that the ALJ ignored evidence generated after the expiration of her insured status does not withstand scrutiny. To the contrary, the ALJ made extensive findings as to plaintiff's evidence of disability generated both before and after her date last insured. The ALJ's decision notes that plaintiff made only limited reports of pain symptoms to her doctors prior to the expiration of her insured status. AR 322.

For example, prior to September 4, 1996, the ALJ found only "a few complaints of low back pain" and a single complaint each of "hand cramps" and "abdominal pain."  Id.  The ALJ further observed that in regard to plaintiff's complaints of pain in her neck, shoulders, upper back, temporomandibular joint, right leg and foot; headaches; joint swelling and pain; and muscle stiffness and spasms "the objective medical evidence clearly indicates that the claimant never had these latter problems until <u>after</u> June 30, 1996 * * *."  Id.  The ALJ went on to say that no impairment could be "inferred from the recitation of symptoms after September 4, 1996, both because symptoms alone are insufficient to establish an impairment and because there is little connection between the claimant's pre- and post-September 4, 1996 symptoms." Id at 322-23.

Plaintiff carries the burden of proving the onset of a qualifying disability prior to June 30, 1996, her date last insured.  See <u>Johnson</u>, 60 F3d at 1432.  As in <u>Johnson</u>, the "medical reports during the relevant time period make only limited references to medically observed limitations on functional capacity; therefore they fall short of the substantial medical evidence required to establish a disability" within the meaning of the act.  Id at 1433.

The ALJ duly considered all the evidence in the record, including evidence post-dating plaintiff's date last insured, and concluded that nothing established the existence of a disability prior to that date.  The ALJ's conclusion is supported by substantial evidence and is premised on the proper legal standard.  Plaintiff's first argument accordingly fails.

11

2

Plaintiff next contends that the ALJ erred in not consulting a medical advisor. ALJs are required to adhere to rules set forth in Social Security Rulings (SSRs). <u>Holohan v Massanari</u>, 246 F3d 1195, 1202, fn 1 (9th Cir 2001). SSR 83-20 requires an ALJ to consult with a medical advisor in any case where, because of ambiguity in the evidence, an onset date must be inferred. <u>DeLorme v Sullivan</u>, 924 F2d 841, 848 (9th Cir 1991). In <u>Armstrong v Comm'r of Soc Sec Admin</u>, 160 F3d 587 (9th Cir 1998), the Ninth Circuit ruled that an ALJ's determination that a claimant had become disabled at some time after March 31, 1992, his date last insured, but before August 9, 1994 was erroneous because he failed to set a specific date of disability onset. Id at 589. The court held: "where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." Id at 590.

To qualify for DIB, plaintiff must demonstrate that she not only has a disabling impairment, but also that her impairment is "severe." 20 CFR § 404.1520(a)(4)(ii). Plaintiff's impairment is "severe" if it "significantly limits [her] physical or mental ability to do basic work activities." 20 CFR § 404.1520(c).

Unlike the ALJ in <u>Armstrong</u>, the ALJ here did not find that plaintiff had a disability within the meaning of the Act at any time, either before or after June 30, 1996. The ALJ stated: "Since the objective medical evidence clearly indicates that the claimant never had these latter problems until after June 30, 1996, it is unnecessary for me to dwell in this decision on whether these latter alleged impairments are 'impairments' or 'severe.'" AR 322.

The ALJ acknowledged that plaintiff had experienced some post-laparoscopy pain symptoms, but specifically declined to reach whether such symptoms were either "impairments" or "severe" within the meaning of the Act. AR 322. Crucially, the ALJ determined that the evidence could not reasonably support placing the onset of plaintiff's current pain symptoms any earlier than September 4, 1996. AR 324.

SSR 83-20, as interpreted by DeLorme and Armstrong, requires an ALJ to call on a medical expert only when there is ambiguity as to a date of onset. DeLorme, 924 F2d at 848; Armstrong at 160 F3d at 590. The ALJ properly determined there was no ambiguity in this case, noting that "[i]n her 'Disability Report,' [plaintiff] dated all problems and functional limitations from September 4, 1996 onward." AR 323. Indeed, of all the symptoms plaintiff experienced after her date last insured (June 30, 1996), only plaintiff's back pain was also present prior to this date. AR 323. Further, plaintiff's back pain was never bad enough prior to June 30, 1996 to warrant more than a few passing notations in physicians' reports, or to prevent plaintiff from being able to lift fifty pounds. AR 323. The ALJ — permitted to consider a claimant's "daily activities" in assessing a claim for DIB, Fair v Bowen, 885 F2d 597, 603 (9th Cir 1989) — made specific note of plaintiff's testimony that she could not "interact [with her] children as much as [she] used to after" her laparoscopy. AR 91, 323.

Because there was no ambiguity as to plaintiff's date of disability onset, the ALJ was not required to call on the services of a medical expert. The ALJ's determination here that no such ambiguity existed is supported by substantial evidence in the

13

record, and adheres to the correct legal standard.  Plaintiff's argument accordingly fails.

3

Finally, plaintiff argues that the ALJ improperly discounted the import of her testimony and that of her husband, as well as evidence of plaintiff's early pain symptoms and her alleged mental impairments.

In evaluating the testimony of a claimant or other witness in a DIB proceeding, an ALJ may properly rely on "ordinary techniques of credibility evaluation."  <u>Fair</u>, 885 F2d at 604, fn 5 (9th Cir 1989).  Here, the ALJ noted that most of plaintiff's testimony focused on her current pain, rather than on pain or disability prior to the expiration of her insured status.  AR 323. Even that testimony that focused on pain symptoms prior to June 30, 1996, was contradicted by two separate sources.  First, plaintiff's statements in her original application for DIB indicate that all her current pain symptoms are "all due to complications ever since" her laparoscopy of September 1996.  AR 87.  Second, the ALJ noted that plaintiff reported to numerous doctors and other health professionals both that her pain started after her laparoscopy, and that she had experienced no health problems prior to the surgery. AR 322.

Similarly, plaintiff's husband testified that whatever pain plaintiff was experiencing prior to June 1996, it was in decline through 1994 and 1995, and had increased "dramatically" after plaintiff's laparoscopy in September 1996.  AR 323.  The ALJ took note of plaintiff's husband's testimony that only after plaintiff's laparoscopy did he "become 'heavily involved' and 'more

14

active' in the daily household chores because of [plaintiff's] decreased capacity to perform work around the home."  Id.  Overall, the ALJ determined that the husband's testimony did not "shed any light" on plaintiff's disability claim.  Id.

The ALJ's decision to discount plaintiff's and her husband's testimony in favor of the "substantial other evidence of record" showing no disabling impairments prior to September 4, 1996 is supported by substantial evidence.  Id.

Plaintiff also asserts that the ALJ failed to give sufficient consideration or weight to plaintiff's mental impairments.  The Ninth Circuit has recognized that mental impairments often progress slowly, and a precise date of onset may be difficult to establish.  See Morgan, 945 F2d at 1082 (citing Blankenship v Bowen, 874 F2d 1116, 1122-23 (6th Cir 1989)).  Here, the ALJ did not err in concluding that plaintiff suffered from no debilitating mental impairment prior to her date last insured or at anytime thereafter.  Plaintiff reported experiencing "palpitations" according to a November 1996 report by Dr Stephen Raskin, who characterized these palpitations are "poorly described and unassociated with significant symptomatology."  AR 130.  While at least one medical doctor (an orthopedic surgeon) believed plaintiff suffered from "psychological problems," AR 255, this view was contradicted by Dr Peter Alevizos, a clinical psychologist, who determined plaintiff had no underlying depression and that what she required was "help dealing with her distress and coping with the physical sequelae" flowing from her laparoscopy.  In short, there is nothing in the record to support plaintiff's contention that she suffers from a disabling mental impairment.  As the ALJ correctly

15

pointed out, symptoms alone are not enough to establish a disability. 20 CFR § 404.1528(a); see also 20 CFR § 404.1508 ("A * * * mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). The ALJ applied the correct legal standard and his decision was supported by substantial evidence.

IV

For the foregoing reasons, the court affirms the SSA's decision to deny benefits. Accordingly, the court DENIES plaintiff's motion for summary judgment (Doc #10) and GRANTS defendant's motion for summary judgment (Doc #13). The clerk is directed to close the file and terminate all open motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Judge